## OVERSEAS SHIPPING CO. v. STRUTHERS & DIXON.

(Circuit Court of Appeals, Ninth Circuit.  May 17, 1920.)

No. 3338.

1. **Shipping ⬤108—Libel for breach of contract with broker held insufficient for failure to disclose shipper.**

Where a broker's contract reserving space for shipment of steel at a fixed rate stated that certificate of readiness and willingness of shipper would be furnished, a libel which did not allege that the certificates were furnished was insufficient, though it did allege an agreement between the broker and a shipper to use the space.

2. **Admiralty ⬤66—Amended libel for breach of contract with broker, alleging broker was shipper, held inconsistent, and not to state cause of action.**

Where a contract reserving shipping space was made by libelant as broker, and provided that he would furnish certificates of readiness of shipper, an amended libel for breach of contract, which alleged that libelant was the shipper was inconsistent with the contract, and did not state a cause of action.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

In Admiralty.  Libel by the Overseas Shipping Company against Struthers & Dixon, a copartnership, to recover damage for alleged breach of contract.  Decree for respondent, and plaintiff appeals. Affirmed.

Ira S. Lillick, of San Francisco, Cal., for appellant.

Geo. W. Towle, of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge.  In an original libel filed in this case the libelant alleged that on the 12th day of July, 1917, the respondent entered into an agreement with the libelant, which agreement was attached to the libel, marked "Exhibit A," specifically referred to and made a part of the libel.  It was charged that under the terms of this agreement the respondent agreed to reserve space in ships leaving the port of San Francisco, for Kobe, Japan, said space to be sufficient for the shipment of 1,000 tons of steel plates at the rate of $15 per ton; that respondent did not reserve said space nor make the shipment as provided in said agreement to be made during August, 1917, and failed to reserve space for or ship said 1,000 tons of steel plates, or any part thereof, save and except that on or about the 2d day of September, 1917, said respondent shipped 150 tons of said steel plates upon the steamer Kotsu Maru, and has at all of the times mentioned refused, failed, and neglected to reserve the space for and ship the balance of said steel plates as per agreement, or otherwise or at all; that, by reason of such default on the part of the respondent, libelant was compelled to and did reserve space and make shipment of said steel plates on other vessels at an increased rate therefor, in the sums

particularly mentioned in the libel, and for which it demanded judgment.

To this libel respondent interposed a number of exceptions, among others that the libel did not state facts sufficient to constitute a cause of action. A hearing was had upon those exceptions, and the questions involved were submitted to the court for a decision, but before the court had ruled upon the exceptions libelant ex parte filed its first amended libel, to which exceptions were also interposed, and upon a hearing were submitted to the court for decision. The court sustained the exceptions to this first amended libel, and leave to file a second proposed libel was denied, and thereupon the court entered a decree dismissing the libel. From this decree the present appeal is prosecuted.

The agreement referred to in the original libel and in the first amended libel as Exhibit A is as follows:

"Exhibit A to Libel. (On Letter Head of Overseas Shipping Company.) San Francisco, 7/12/17. Engagement No. 201. Subject to 1¼ per cent. brokerage to be paid to Overseas Shipping Co. Struthers & Dixon, San Francisco, Cal. Confirmation Advice. Dear Sirs: We hereby confirm booking with you this date of the following freight, for which, we understand, you have reserved space: Quantity: 1,000 tons. Commodity: Steel plates 5'x20' and under. Destination: Kobe. Rate of Freight: $15.00 per net ton prepaid. Clearance: August—300 tons Shinghiku Maru, 700 tons Kotsu Maru. This booking is authorized by ———. Will advise later ———, Shipper, pursuant to freight contract No. ———, and we shall furnish you with certificate of readiness and willingness of shipper to perform, upon receipt of same from the shipper. Please confirm this booking by signing and returning the inclosed duplicate copy by return mail, giving us your engagement number. Very truly yours, Overseas Shipping Co., Freight Broker, by [Signed] E. C. Dailey."

[1] In that agreement, the libelant, after specifying the freight, its quantity, character, destination, and vessels for shipment, declared itself to be a freight broker, and that the booking was authorized by a shipper, whose name was not disclosed. A blank space was, however, left for the name to be thereafter inserted. It was never inserted. The libelant, as broker, agreed to furnish the respondent with certificate of readiness and willingness of shipper to perform, upon the receipt of the same from the shipper. It appears from the letter head that the engagement was subject to 1¼ per cent. brokerage to be paid to the libelant. The agreement awaited the name of the shipper and his certificate before its terms would be complete. This certificate was never furnished.

In the first amended libel it is alleged that the libelant entered into an agreement with the Northwest Trading Company, of Seattle, Wash., under and by virtue of which agreement libelant agreed to ship in ships leaving the port of San Francisco for Kobe 1,000 tons of steel plates at the rate of $15 per ton. It is not alleged that the Northwest Trading Company was the shipper referred to in Exhibit A, or that it furnished the certificate provided for in the agreement. This allegation added nothing to the sufficiency of the libel. On the contrary, it appears to have been wholly irrelevant and immaterial to the terms of the agreement mentioned in Exhibit A.

[2] The second amended libel was not filed, and is not in the rec-

ord; but the court refers to it in its opinion, from which we learn that it averred:

"That libelant entered into the contract on its own account for its own benefit, and that relying upon its performance by respondent it made contracts in its own behalf as principal with shippers of steel plates to ship for August clearance 300 tons on the Shinghiku Maru, and 700 tons on the Kotsu Maru in the space reserved by it."

This is directly contradictory to the terms of Exhibit A and the inference sought to be conveyed in the allegation in the first amended libel concerning the shipment by the Northwest Trading Company. But, assuming that this allegation in the second amended libel was true, then why did not the respondent say so in its agreement with libelant? Why did it allege that it had held itself out as a broker, acting for a stranger whose name was to be disclosed later? Why, in the first amended libel, did it refer to the Northwest Trading Company? Why did it not say that it was the shipper, and that it would furnish the respondent with its own certificate of readiness and willingness to perform the terms of the agreement? The respondent was entitled to know with whom it was dealing, and the libelant had agreed that it should know, but failed to keep the terms of that agreement. The libel was clearly inconsistent in setting forth its relation to this transaction, and by reason of such inconsistency and uncertainty it did not state a cause of action, and for the same reason we find that the second amended libel, assuming that it is before us, is insufficient, and does not state a cause of action.

The judgment of the court below is affirmed.